Let the necessary writs and orders be prepared.

**LE BLANC v. CHANDLER LABORATORIES et al.**

**Civ. A. No. 1743.**

United States District Court
W. D. Louisiana, Opelousas Division.

Feb. 16, 1946.

Edward F. Le Blanc, Abbeville, La., for plaintiff.

Edward Rightor and Edward R. Schowalter, both of New Orleans, La., for defendant.

J. D. Bailes and A. M. Dreyer, of Washington, D. C., for Office of Price Administration.

PORTERIE, District Judge.

On the "Perishability" phase of this case I think the Court needs to say very little except to refer to the first affidavits that were filed with the papers in the case. Among those is the affidavit of one whom I have known all of my life, a high school friend, who is now in the sugar business. He was one of the affiants, and I believe him.

Secondly, we have here the question of the necessity of an immediate sale. We know if we are going to pay the creditors in this case we must not wait until the liquid, or substance which is the subject matter of this litigation, has turned into vinegar, or has fermented to where it cannot be used at all. From the Court's own knowledge of syrups and molasses, the fact that the spring heat will soon be coming on, then the summer heat, we know if immediate action is not taken, should we wait very long, we would have nothing to dispose.

On the matter of prices and price schedule regulations not being applicable to a judicial sale, the Court relies on Section 1, Second Rev. Supplemental Order No. 10, of date November 26, 1945. This section has been quoted in part or in full elsewhere in this transcript.

One of the facts I think that has developed in this case from the evidence of the expert is that the operation that went on at each of the four mills involved in this suit was a syrup-making operation and not a sugar-making operation. That, I believe, is of inestimable importance in arriving at a determination of what the produce at the end is, whether it be syrup or sugar. I believe the expert witness has shown that the process in the main, except for the modern type of machinery used, is the same operation as was in effect a number of years ago in the manufacture of sirop de batterie, with which this Court is thoroughly familiar; and knows personally, in addition to having the expert testimony, that it is a syrup.

This Court is impressed with the fact that a brother judge in a court in Philadelphia has ruled this substance to be sugar, and has issued a temporary injunction prohibiting the plaintiff manufacturer herein, the Chandler Laboratories, from selling it unless it comply with the ration regulations as to sugar. From what this Court has gathered the Philadelphia hearing was very likely predicated upon the fact that this product could be used as a substitute for sugar in the manufacture of soft drinks. This Court grants that the Philadelphia Court did not have advantage of the locale as we have here, nor of the expert witnesses we have had as to the issue that this was a syrup-making operation, and that its chemical content was such that the expert witness classified it unqualifiedly as syrup and not as sugar. So with due respect that we have for the other Court, we merely observe that it had neither the advantage of locale nor the expert conclusions that we have in the instant case.

There is some difficulty here in coming to a proper interpretation of the regulations and whether or not we can arrive at an unqualified opinion as to exactly what they mean. In taking up Office of Price Administration Document No. 48896, MPR 16, dated August 27, 1945, Sub-Section B., Section 7 thereof, under "Raw cane sugars", we find: " 'Raw cane sugars' means any sugars which are principally of crystalline structure and which are to be further refined or improved in quality, and any sugars which are principally not of crystalline structure but which are to be further refined or otherwise improved in quality to

produce any sugars principally of crystalline structure." From that language, from the testimony of the expert witness, and from the Court's own personal knowledge as to what is sugar and what is syrup, this product here on exhibition would not be "Raw cane sugar". There is not much difficulty in that definition.

However, there is more difficulty when we take Section 27, Under Article 24, Definitions, Office of Price Administration Document 51574 3 Rev. R03, of date December 29, 1945. This Section 27, gives the following definition: "Sugar means any grade, or type of saccharine product derived from sugar beets or sugar cane, which is not to be, and which shall not be, further refined or otherwise improved in quality; except sugar in liquid form which contains nonsugar solids (excluding any foreign substance that may have been added) equal to more than six per centum of the total soluable solids, and except also syrup of cane juice produced from sugar cane grown in continental United States."

Giving consideration to the product before the Court, as described by the expert, we are confronted with the fact it is derived from sugar cane, and then we see, "which is not to be, and which shall not be, further refined or otherwise improved in quality." We cannot say this exhibit is refined sugar, cube sugar, powdered sugar, or crystal sugar, or any of the other forms of commonly known sugar. But it goes on to say: "except sugar in liquid for which contains nonsugar solids (excluding any foreign substance that may have been added) equal to more than 6 per centum of the total soluble solids." From this the Court repeatedly asked the expert whether or not this substance could be technically or otherwise classed as "liquid sugar", and he was very emphatic in his contention that the very moment sugar goes into solution it is no longer sugar.

Then continuing reading: "and except also syrup of cane juice produced from sugar cane grown in continental United States." There is no question but that this product was made from sugar cane grown within the continental United States, the only point being whether it is sugar, as

defined by the regulations, or syrup. I believe from the facts before me it is a syrup.

The only point against is whether it is such a commodity as can be classed as a commercial syrup, such as you put on your flap-jacks, or whether it is something else.

Now, we go to the second half of Section 27.

Frankly, I may say that within the last two or three days I have studied this document a great deal in anticipation of having to decide this case today, and this phrase "liquid sugar" was of much concern to me and I anticipated you gentlemen would lay stress on that in your argument. I thought you might contend this substance is "liquid sugar". But the expert witnesses have unqualifiedly and very emphatically stated this is not "liquid sugar"; that to be sugar it has to be a solid, and that it cannot be a liquid; that if it be in liquid form it is a syrup.

Certainly it would not come under this definition of Section 27 which says, "which is not to be further refined or otherwise improved in quality." It, therefore, seems definitely to class itself under this regulation as "sirup". That word "sirups" found in the second half of Section 27 seems redundant in itself, and it seems it should not appear there, because the syrup that we are speaking of and are familiar with and have known all of our lives is exempt from rationing. The word "sirups" should not be in this definition.

One explanation of the word "sirups" appearing in the second half of Section 27, when it should not be there because everyone knows sirup is not rationed, was furnished by Mr. Schowalter, one of the counsel, in that it referred to offshore-sirup. This is not such a farfetched deduction, after all, for the first half of Section 27 has the language "and except also syrup of cane juice produced from sugar cane grown in continental United States."

It may be that the Chandler Laboratories in the production of this commodity may have had the purpose of evading the OPA law. Be that as it may, it is obvious that you have this liquid here which is very difficult of being called sugar.

We are confronted with the fact, as disclosed by the evidence, that because of these regulations more sugar cane is going into the manufacture of syrup than into sugar, which is a natural and normal result.

The OPA authorities very properly and correctly excluded sirups and molasses from rationing. They permitted an increase in the production as compared to former years by allowing 110% production of sirup and molasses as compared to the basic year. When we declare the special liquid sirup herein not sugar and not subject to rationing, we are following the general tendency of the OPA when it permitted molasses and sirups to not only go unrationed, but to go into increased production. Concurrently, too, the Government has not to pay parity payments per ton of cane to the grower whose cane goes into the production of this special sirup.

So the result of the ruling of this Court in this case is in line with the written regulations.

Secondly, we think this is in keeping with the definitions contained in the regulations of the products exempt from rationing and is properly classified as "Syrup".

Finally, we grant, as a matter of fact, this liquid may go into the making of soft drinks. Soft drinks are nourishing. Certainly there is no moral barrier against their use, and there is no legal barrier against the use of this liquid for the making of soft drinks.

Certainly the cane growers, as well as the laborers involved in this action, are morally, legally and equitably entitled to be paid. They are all hard-working men, and have performed their work in good faith. Likewise the good faith of the grinders has not been contested nor impugned.

The Court is confronted with the duty of attempting to realize as much as possible from the proceeds of the sale of the molasses and special syrup that is under seizure—the debt is probably in excess of a half million dollars—and with the preservation and sale of this produce, before deterioration, at its highest possible sales price, to the end that justice may be done to everybody involved.

Confronted with that situation, the Court is of the opinion that, in a case where a close decision must be made of the meaning of regulations it would leave me in a terrible situation were I to hold otherwise than that a quick sale should be made of it. I could not face my own conscience were I to hold that no sale should be made because of a technicality in a regulation which might possibly be construed differently than in the manner I have construed it and thus permit the substance to become a total loss, which is far worse than using it for soft drinks, or otherwise.

Furthermore, there need be no recurrence of our mistake—if we are making one—because before the next crop the OPA regulations can be made to read so clearly that there will be no possible ambiguity.

My conscience is clear in this case, gentlemen. I say it is syrup, not sugar. That is all.