**PORTER v. BARRETT et al.**

**Civ. A. No. 5431.**

United States District Court
E. D. Pennsylvania.
Aug. 20, 1946.

**GANEY, District Judge.**

This is an action by the Price Administrator of the Office of Price Administration to enjoin the defendants, individually and as copartners, trading as Chandler Laboratories and as Beverage Products Division, from engaging in acts which violate the sugar regulations of the Second Revised Ration Order 3[1] and of General Ration Order No. 8[2] and thereby violate Section 2(a) of the Second War Powers Act of 1942, as amended.[3]

 Jurisdiction of this action is conferred on this court by virtue of Sec. 2(a)(6) of the Act, 50 U.S.C.A.Appendix, § 633.

This action was begun on November 26, 1945 and on the same day, until a hearing for a preliminary or final injunction could be had, a temporary restraining order was entered, restraining the defendants from using as industrial users of sugar more sugar in any allotment period than their allotment for that period, from purchasing, receiving or using any sugar until they registered their four industrial user establishments with the OPA, and from transferring sugar or using sugar manufactured by them in the production or processing of any sugar containing product or syrup except upon receiving and surrendering to OPA authorities ration evidences equivalent in weight value to the sugar so transferred or used by them, as provided in the Ration Orders.

The complaint, as amended, alleged that in December of 1943, the defendants had registered as industrial users of sugar with the OPA under the ration orders then in force and had in the year of 1944 and again in 1945 received from OPA sugar certificates which represented the "weight value" or the amount of sugar to which the defendants were entitled to buy in any quarterly period of the year; that these allotments were based on the amount (46,791 pounds) of sugar used by the defendants' predecessor during the quarterly periods of the year of 1941; that on or

Harry W. Steinbrook, District Enforcement Attorney, Walter N. Moldawer, Chief, Food Enforcement Section, Philadelphia, Pa., for plaintiff.

Vernon Booth Lowrey, Washington, D. C., Clarence J. Corcoran, Philadelphia, Pa., for defendants.

---

1. November 16, 1944, 9 Fed.Reg. 13641 et seq.
2. April 15, 1943, 8 Fed.Reg. 3783.
3. Act of March 27, 1942, Title 111, Sec. 301, 56 Stat. 177, 50 U.S.C.A.Appendix, § 633.

about October 25, 1945, the defendants leased four sugar mills and their accompanying facilities for the sugar-cane harvesting season beginning October 19, 1945 and ending January 31, 1946 for total rentals of One Million Two Hundred Thousand Dollars ($1,200,000), but in the event of interruption or termination of the leases through the issuance of any State or Federal Regulations or Orders, the rentals were to be settled on the basis of five dollars per ton for all sugar-cane actually milled and processed by the leased facilities during the period of the lease; that these mills were located in the State of Louisiana and that they had a capacity of processing approximately two hundred forty thousand (240,000) tons of sugar-cane during the lease period; that the defendants failed to register these four establishments with the OPA; that the defendants operated the four mills for the processing and manufacturing of the juice of sugar-cane into sugar at the rate of approximately five hundred thousand (500,000) pounds of sugar per day and that until the time of this suit had manufactured approximately fifteen million pounds of sugar; that they used all this sugar in the manufacture of a product which is sugar as defined by the ration order; that they called this product "pure cane flavored syrup" which was made by adding hot water to the sugar and, on some occasions, an almost imperceptively minute quantity of flavoring matter which did not interfere with its use as sugar, thus exceeding their sugar quota or allotment by a mere fifteen million pounds; that the defendants have held themselves out to the OPA and to the public as industrial users of sugar and that they have advertised their product as a non-rationed product throughout the country and that they have collected advance payments aggregating over two million dollars for orders for hundreds of thousands of gallons of the product from bottlers of soft-drinks and other industrial users of sugar, and that they have shipped their product to their customers without requesting or accepting ration evidences as required by the Ration Orders.

Thus in the amended complaint filed March 21, 1946, the original complaint became Count One, and the supplemental complaint became Count Two. The basis of Count One is that the defendants as "primary distributors" (manufacturers of sugar) delivered Sugar to itself as an "industrial user" without the surrendering of any ration evidences and that they used more sugar in an allotment period than their allotment provided. The basis of Count Two is that the defendants represented to the OPA and to the public that they were "industrial users" of sugar when in fact they were "primary distributors", selling a product which was sugar within the meaning of the ration regulations, to others without obtaining ration evidences.

While this action was pending in this court, Edward F. LeBlanc, who managed the operations of the four sugar mills for the defendants, filed in the State Courts of Louisiana on or about November 29, 1945, attachment proceedings against the defendants' product then on hand and in various stages of production at the mills for the ostensible purpose of collecting wages due him from the defendants. (It appears that the real purpose of the proceeding was to use the courts as a means of transferring to others the very product which the defendants, by an injunction of this court, were restrained from transferring.)

On December 3, 1945, the case came up in this court for a hearing upon a motion for a preliminary injunction, and defendants agreed to the issuing of said injunction without a hearing because as stated they wished to defend the attachment proceeding brought against them in the Louisiana State Court. This court set February 11, 1946, as the date for a final hearing on the motion for a permanent injunction.

The defendants removed the attachment proceeding pending in the Louisiana State Courts in the Opelousas Division of the Western District of the United States District Court of Louisiana and there impleaded other parties to whom they were indebted as the result of contracts concerning the res which was then in the jurisdiction of that court. The Administrator of OPA, who was also impleaded, exercised his option as a representative of the sovereign

and requested to be dismissed as a party to the proceedings. After hearing the testimony of defendants' expert witness, Judge Porterie, in the LeBlanc v. Chandler Laboratories et al., D.C.W.D.La., 89 F.Supp. 32, found that the product or res which was in the jurisdiction of the court was of a perishable nature, and that in order to bring the highest price, it would be necessary to sell the product immediately, and that the operation that went on in the four sugar mills was a syrup-making operation and not a sugar-making operation, and that, therefore, the end product of the operation was syrup and not sugar, and ordered that the product or res be sold at public auction without being subject to OPA regulations as to sales price or rationing currency. The same Judge on February 19, 1946, in a motion Ex Proprio Motu, warned that the OPA was not relieving buyers from compliance with Sec. 8.5(c) of the Third Revised Ration Order 3, issued December 29, 1945; and also that the Department of Agriculture was not exempting buyers, sellers, or users of edible molasses from the force and effect of War Food Order 51.

The final hearing of the case before this court was continued until March 25, 1946, at which time the defendants filed their answer to the complaint as amended denying that they made sugar as defined by Second Revised Ration Order 3, that they were industrial users of sugar and that the ration regulations apply to them or their operations. Therefore the defendants moved to dismiss the complaint on the ground that it is insufficient as a matter of law; and for a summary judgment. Six reasons were set forth for the basis of their motion.

### Discussion

Primarily for disposition is the contention of the defendants that the bringing of this action in this district was oppressive and inequitable and was intended to and does deprive defendants of a fair and reasonable opportunity to present their defenses.

Section 2(a) (6) of the Second War Powers Act, as amended, 50 U.S.C.A.Appendix, § 633 provides that the district court of the United States shall have jurisdiction of violations of subsection (a) of this Act or any rule, regulation or order issued thereunder and of all civil actions to enforce any liability or duty created by, or to enjoin any violation thereof, whether heretofore or hereafter issued. It further provides that the venue of any such civil action may be brought in the district where the violation occurs or in the district in which the defendant resides or transacts business.

Under the power conferred upon the President of the United States by Sec. 2(a) (2) and (8) of the Act, and duly delegated to him, the Administrator issued General Ration Order No. 8 and Second Revised Ration Order 3. In this action, the complaint alleged that the defendants violated these ration orders and that they transact business and have their principal office and place of business in Philadelphia, Pennsylvania. According to the plain language of the Act and the allegations of the complaint the venue of this action is properly laid in this district. The choice of places where a civil action may be brought against a defendant in the event that he violates an order or regulation of OPA is for the convenience of the Administrator and not the defendants. The requirement of having the defendants bring their witnesses from the State of Louisiana to this district, in view of the size and extent of their venture in that State, which ran into the millions of dollars, is not so harsh or inequitable as to deprive them of a fair and reasonable opportunity to present their defense. To ask the defendants to bear the expenses of their witnesses for the brief time needed for the trial of the issues in this case would be but a small fraction of their expenses in this case and would not impose on them an unreasonable burden.

The defendants' reasons for the motion to dismiss the complaint and for summary judgment in addition to that the question raised by the pleadings in this case are moot, may be stated as follows: The defendants are not subject to the Second Revised Ration Order 3 because (1) the record in the case shows that they combined in one person the function of primary distributors and industrial users of sugar, and (2)

the product which they produced was not sugar or a sugar-containing product within the meaning of the Ration Order.

The first reason is evidently based on paragraph fourteen of Count One of the complaint which provides: "That the defendants as primary distributors have delivered to defendants as industrial users over 15,000,000 pounds of sugar since October 1, 1945, manufactured as aforesaid, which the defendants as industrial user have used in the manufacture of their so-called 'pure cane flavored syrup'. That said sugar was delivered, accepted, received, acquired and used without transfer or surrender of any ration evidences". The theory on which Count One of the complaint is based is that the defendants at some point in the production of their product manufactured sugar and that this sugar was used in producing their final product; that up to the point where sugar was manufactured, the defendants were primary distributors and that when they began using the sugar in producing their final product, they became industrial users. At the point where this transformation took place, it was the duty of the defendants as industrial users to deliver ration evidences to themselves as primary distributors, which they in turn were to surrender to the OPA authorities. It would seem that if the defendants are correct in their reasoning, a person who grows or buys sugar-cane may process the entire crop into a non-rationed product and thus divert a source from which sugar is derived without being subject to the rationing orders, that is, without being obligated to surrender up ration evidences to the OPA authorities. We must revert to the Second Revised Ration Order 3 to determine the merit of this reason. The definitions of the terms used in that order are to be found in Section 18.1(c).

(12) defines a "primary distributor" as any person who manufactures sugar.

(9) defines an "industrial user" as any person who has an industrial user establishment. It further defines an "industrial user establishment" as any establishment where a person uses sugar in producing, manufacturing, or processing any product other than sugar if the product is not to be used in the preparation or service of food or beverages which the establishment or its owner serves to customers.

(11) defines a "person" as an individual, partnership, corporation, association, etc.

(6) defines "delivery" as the transfer of physical possession or the transfer of a document of title.

Section 6.2 of the same order provides: "Except as is otherwise provided herein, a primary distributor may deliver sugar to persons not primary distributors, on and after April 28, 1942, only upon receipt of stamps or certificates in the manner set forth in this order".

Section 17.6(a) provides that: "No person may deliver sugar to any individual user and no industrial user may accept delivery of sugar from any person unless such person receives from the industrial-user evidences covering the amount of sugar delivered".

Section 17.14(b) provides: "No person, unless expressly permitted by this order or otherwise authorized by the Office of Price Administration, may deliver sugar unless he receives evidences covering the amount of such sugar or accept delivery of sugar unless he surrenders evidences for that amount of sugar".

From the definition of the term "delivery", even if we assume that at some point along the line in the production of their product the defendants manufactured sugar as defined by the ration order, we are driven to the conclusion that where the primary distributor and the industrial user are one and the same person, there can be no transfer or delivery of sugar to itself. It would appear to follow that in such instances the sugar ration orders do not apply.

The soundness of this conclusion appears to be confirmed when we take into consideration the set up of the sugar-cane industry as it existed at the inception of sugar ration. Cane-sugar is produced in the State of Louisiana, Cuba, Porto Rico and the Philippines. Normally it was and still is economical to manufacture sugar near the source of supply of the cane.

Therefore the sugar mills (primary distributors of sugar) were located near the cane fields. The industrial users establishments were located near the markets for sugar-containing products. Such an arrangement minimized the cost of transportation of the sugar to refineries and industrial users of sugar and the cost of sugar-containing products to the consumers. Thus it appears to us that the sugar Ration Orders were written in view of the then existing sugar industrial set up; that is, the primary distributors and the industrial users were considered separate entities. In addition, to sustain Count One of the complaint, it would be necessary for this court to hold that a manufacturer of a non-rationed product whose material at some stage of a continuous operation incidentally takes the form of sugar would become prior to that point a primary distributor and thereafter an industrial user and thus be obligated to surrender up ration evidences to itself.

Although it would seem to us that he has the authority to do so, the Administrator of OPA, as far as we have been able to discern from a reading of the Ration Orders brought to our attention, has not made an order which contemplates or provides for a situation on which Count One of the amended complaint is based.

Therefore Count One of the complaint is dismissed.

In support of their second reason, that is the product which they produced was not sugar or a sugar containing product within the meaning of the ration orders, the defendants contend that the complaint upon its face admits that the product manufactured by them is not sugar.

A casual glance at paragraph six of Count Two of the complaint as amended will furnish a sufficient answer to this contention. That paragraph alleged "The resulting product so manufactured by the defendants was sugar as defined in said ration order". In addition paragraph seven of the same count alleged that the defendants "have sold and delivered to industrial users of sugar and to distributors for resale, over 15,000,000 pounds of sugar as defined in said ration order".

The second contention asserted in support of their second reason is that on the question of fact presented in this case, this court is bound by the findings and pronouncements of the United States District Court of the Western District of Louisiana in LeBlanc v. Chandler Laboratories, et al., supra. It would seem to us that in the case before that court there was only one issue before it, namely, whether the product manufactured by the defendants was of a perishable nature requiring its immediate sale. That court found that the product or res was of a perishable nature and in order to attain the highest price to protect unpaid creditors of the defendants, ordered the sale of the product. However, in addition to finding that that product was of a perishable nature, the court found that the operation that went on in the four sugar mills in question was a syrup-making operation, and not a sugar-making operation and that the end product was syrup and not sugar. The defendants contend that we are bound by the latter finding as well as the first. They cite authorities for the well established principle of law that when courts of concurrent jurisdiction have before them questions involving the same res, the court having actual custody of the res, will proceed and the other court, even though its jurisdiction first attached, will stand aside. With this principle of law and the right of the Louisiana District Court to take jurisdiction of the res and order its sale subject to the claims of the defendants we have no quarrel. However it should be noted that the action in this court is one in personam; it was brought to restrain the defendants from doing certain acts which the complaint alleges to be in violation of the ration orders and the Second War Powers Act. The res in this case is important to us only in that it is some evidence of the product manufactured by the defendants. While on the other hand, the action in the Louisiana Court was one quasi in rem.[4] As has been indicated, the

---

4. See Restatement, Judgment, Sec. 76, Comment a & c.

only issue before that Court was whether or not the res was of a perishable nature and the respective claims of the defendants' creditors.

Section 1 of the Second Revised Supplementary Order 10 provides: "Except as provided in Section 2 hereof, no provision of any price schedule, maximum price regulation or other pricing order issued by any office of the Office of Price Administration shall be deemed to apply to any sale, auction or otherwise, (a) held pursuant to the provisions of any order of sale made or entered by a State or Federal Court, (b) held by a sheriff, constable, bailiff, marshal or other judicial officer pursuant to applicable State or Federal Law, * * *".

Section 9.5(a) of the Third Revised Ration Order 3 provides: "Sugar may be delivered without the receipt of ration evidences to a person who gets it for liquidation only. Also no evidence need be given up for sugar delivered as part of a judicial proceeding or by operation of law, or for sugar delivered under the direction of or pursuant to an order of a court or by judicial process."

From a mere reading of these sections it would seem to us that it was not necessary for that court to find that the defendants operation was a syrup-making and not a sugar-making operation and that the product or res was syrup and not sugar in order that it be sold at public auction without being subject to the Orders of OPA as to price and rationing currency. Even though we assume that the product was sugar, OPA orders and regulations would not apply to the judicial sale of the product. In addition, the issue of whether the buyers of the product at the judicial sale must subsequently comply with the regulations was also not before that court. However, this latter point seems to be conceded by that court. By an amended order, it warned that OPA was not relieving buyers of the res from compliance with (c) of Sec. 8.5(c); and the Department of Agriculture was not exempting them from War Food Order 51.

■ But even assuming that we are bound by the findings of the Louisiana District Court, we would not be compelled to dismiss Count Two of the amended complaint. For it should be noted that Count Two alleges that the defendants sold the product in great quantities to others in different states. The product delivered to others prior to the institution of this action was not in evidence or in issue before that court. Therefore its determination could not be binding on this court as to the nature of product which was not before it (unless perhaps it be shown that it was identical to the res which was before that court).

The third contention in support of the reason that its product is not sugar is, that the plaintiff is equitably estopped to allege in this suit that the product manufactured by defendants was sugar. This contention is predicated on the fact that the plaintiff (OPA Administrator), after it had been impleaded in the proceeding in the District Court of Louisiana, moved to be dismissed as a party to the proceeding. That court, after requesting OPA to consent to be made a party and thus give to the court the benefit of its knowledge of the OPA Orders and Regulations, reluctantly dismissed the Administrator as a party to the proceedings. The Administrator argues that the defendants sought to entice him to become a party under Section 205(d) of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 925 (d), which provides: "In any suit or action wherein a party relies for ground of relief or defense upon this Act or any regulation, order, price schedule, requirement, or agreement thereunder, the court having jurisdiction of such suit or action shall certify such fact to the Administrator. The Administrator may intervene in any such * * * action".

■ Thus it can be seen the Administrator is given his choice of intervening and further the issue here presented does not involve any provision of the Emergency Price Control Act but is brought under the Second War Powers Act for rationing violations, and since both of these factors obtain it is difficult to understand any basis for the doctrine of equitable estoppel.

The third reason assigned by the defendants in support of their motion is that the question raised by the pleadings in this case is moot. Under the circumstances of this case, there appears to be no merit to this reason. The acts of the defendants which were alleged to be in violation of the ration orders and of the Second War Powers Act were not voluntarily relinquished by them prior to the institution of this action; they were halted only after an order to do so had been entered by this court. The defendants are vigorously contesting this action and they in no wise acquiesce in the right of the Administrator of OPA to bring this action in the first place. In addition there still remains the question—which the Administrator seeks to have resolved in this court so that he may be guided in his actions in future similar situations—whether the ration orders apply to the defendants' transactions. Nor is there the slightest indication, although they have been halted for the time being, assuming that the product manufactured by them is sugar, that the defendants may not in the future proceed on a similar venture. United States v. Trans-Missouri Freight Association, 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007; Securities and Exchange Commission v. Okin, 2 Cir., 139 F.2d 87; Walling, Administrator v. Reid et al., 8 Cir., 139 F.2d 323; Walling, Administrator v. Mutual Wholesale Food and Supply Co., 8 Cir., 141 F.2d 331, 334; United States v. Aluminum Company of America, 2 Cir., 148 F.2d 416; Bowles, Administrator v. Adelson, D.C. N.Y., 61 F.Supp. 288; Bowles, Administrator v. Ward, D.C.Pa., 65 F.Supp. 880.

Defendants' motion for summary judgment is under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S. C.A. The summary judgment procedure prescribed in this rule is a procedural device for promptly disposing of an action "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that, [except as to the amount of damages] there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". (c) of Rule 56, supra. In this case it can not be said that there is no genuine issue as to any material fact. On the contrary, the gist of this case is whether or not the product manufactured by the defendants was sugar within the meaning of the ration order. This issue must be determined at a trial and cannot be resolved by this court on this motion. "A motion for a summary judgment cannot be made a substitute for a trial either before the court or a jury". United States ex rel. Ryan v. Broderick, D.C.Kan., 59 F.Supp. 189, 192; Evans v. Stivers Lumber Co., D.C.Tenn., 2 F.R.D. 548; Moore; Federal Practice, Sec. 56.04.

Accordingly, since the allegations in Count Two of the amended complaint state a cause of action, and taking into consideration the averments contained in support of the motion to dismiss, a genuine issue of material fact is raised and the motion for summary judgment and to dismiss the complaint are denied.