TOWN OF WAUSAUKEE, Appellant, vs. LAUERMAN, Respondent.

*March 12—April 7, 1942.*

For the appellant there was a brief by *Lehner & Lehner,* *Adolph P. Lehner,* and *Howard Eslien,* all of Oconto Falls, and oral argument by *Adolph P. Lehner.*

For the respondent there was a brief by *E. B. Martineau,* *N. B. Langill,* and *A. J. DeLeers,* all of Marinette, and oral argument by *Mr. Martineau* and *Mr. Langill.*

WICKHEM, J.   The Wausaukee river rises in Marinette county and extends southeasterly for a distance of twenty-two miles at which point it empties into the Menominee river. Defendant owns land in section 18 in the town of Wausaukee adjoining the Wausaukee river.   When this land was purchased by defendant an old dam was located upon it.   Upon the site of this dam defendant, in June, 1928, constructed what is called "Lauerman dam."   He utilized the ground embankments of the former dam; his plans were approved by the railroad commission under sec. 31.31, Stats.   Defendant maintained this dam to create a private fishpond. ₁ The dam was constructed without gates, had a thirty-foot-long spillway, and consisted of earth embankments and a concrete spillway.   Its drainage area was approximately ten square miles.   During flood periods four hundred cubic feet of water per second passed over the dam.   The pond created was between twelve and fifteen acres in area, and the water therein some ten to twelve feet deep.   Prior to construction, the Wausaukee river above the dam was some two to five feet deep and some ten to thirty feet wide and had previously been used to drive logs.   The waters impounded by the dam broke through the left embankment on June 12th and damaged the wings of two bridges below Glendale bridge and washed out the latter bridge.   The repair cost was $403.15 and its share of replacing the Glendale bridge was $970.55.   The

village of Wausaukee is approximately six miles below the Lauerman dam and the dam at Wausaukee was washed out the same night as the Glendale bridge. The rainfall data for High Falls, seventeen miles west of Wausaukee, shows a total precipitation of 2.5 inches for June 10th, 11th, and 12th. Data at Wausaukee, six miles from the dam, shows a total precipitation of 1.78 inches during the same period.

Plaintiff's first contention is that defendant, under sec. 86.02, Stats., is absolutely liable for the damages caused to the highways and bridge by the waters which escaped through the break in the dam.

Sec. 86.02, Stats., reads as follows:

"Any person who shall injure any highway by obstructing or diverting any creek or watercourse or sluiceway, or by dragging logs or timber thereon, or by any other act, shall be liable in treble damages, to be recovered by the political division chargeable with the maintenance of highway injured, and the amount recovered shall be credited to the highway maintenance fund."

Plaintiff claims that defendant can escape this liability only by proving that the accumulation of water which escaped from the dam and caused the damage resulted from an unprecedented rainfall—one that "never, so far as known, had definitely occurred in that vicinity previously;" that the burden was on defendant to establish these exculpating facts and that he wholly failed to meet this burden. Closely connected with these contentions is the claim that the trial court erroneously put upon plaintiff the burden of proving that the rainfall in question was not unprecedented.

Plaintiff argues that the absolute liability for all damages, except those caused by acts of God, applies whether or not the dam is maintained with the permission of the state. In support of this contention *Marion v. Southern Wis. Power Co.* 189 Wis. 499, 208 N. W. 592, is cited. This was an action by plaintiff town to recover damages suffered to its

highways by reason of the maintenance of a dam, the waters of which overflowed these highways. Defendant contended there that the legislative permission to build and maintain the dam rendered defendant immune from liability. This contention was repudiated by this court. It was held that the defendant was liable for the damages in question.

The *Marion Case, supra,* does not support plaintiff's position. There plaintiff sought damages resulting from the ordinary, normal maintenance of the dam. It is evident that for damage that is proximately caused by the mere existence and maintenance of a dam, the proprietor should be absolutely liable irrespective of legislative consent. Such a person must either acquire flowage rights or else pay such damages as are inflicted by the maintenance of the dam. This has always been the law and what was held in the *Marion Case* was reiterated in *Oconto County v. Union Mfg. Co.* 190 Wis. 44, 48, 208 N. W. 989. These cases have no application, however, to a dam which, operated with legislative permission and properly maintained, causes no damage to the property of others. So far as the record discloses, that is the situation here. It would also be the situation in the *Marion Case, supra,* if the defendant had purchased flowage rights for all lands affected or damaged by the normal maintenance of the dam, and if later during a flood the dam had collapsed and caused damage to persons or property downstream from the dam. It is equally clear, and expressly held in the *Oconto Case, supra,* that sec. 86.02, Stats., at least so far as it calls for the infliction of treble damages, has no application "where the act resulting in such damages was expressly authorized by" the legislature. We hold that such absolute liability as is imposed by this section for actual as distinguished from punitive damages, has the same scope as that defined in the *Marion Case, supra,*—that is, where the mere presence or existence of the dam, properly and carefully maintained and

operated causes damage, the proprietor sustains liability and his only recourse is to acquire flowage rights.

This view is fully established by *Trout Brook Co. v. Willow River Power Co.* 221 Wis. 616, 267 N. W. 302. That case involved damages caused by waters released through a break in defendant's dam. The damage was to an owner downstream from the dam. The special verdict as submitted included questions having to do with the structural sufficiency of the dam, and the negligent maintenance and operation of its gates. The court considered negligence to be the material issue in the case. It was said in the opinion (p. 625) :

"One who obstructs the flow of a stream is not required to guard against floods of such unusual and extraordinary proportion as not to have been anticipated by a man of ordinary prudence and experience."

We conclude, therefore, that in a case such as this where the damages are caused by the manner in which the dam was constructed, maintained, or operated, the basis of liability is negligence and there is no absolute liability. This leaves, of course, the question as to the bearing of "unprecedented floods" upon this issue of negligence. In the *Trout Brook Co. Case, supra,* this court said (p. 623) :

"An unprecedented rainfall is defined to be such a rainfall as never, so far as known, definitely occurred before and so is not reasonably to be expected even at long intervals though not impossible."

Applying this definition literally to the present case, some color is given to plaintiff's position. The definition, however, was criticized by this court in the *Trout Brook Co. Case, supra,* and it was said (p. 623) :

"The use of the word 'unprecedented' in this connection is perhaps unfortunate. A flood which exceeded all other prior floods in extent of course is one which defendant is not required to anticipate. It is not the law that if a flood of most unusual proportions has occurred, a riparian is re-

quired in every case to anticipate and guard against a like flood in the future."

Following this discussion, the court laid down the rule heretofore quoted and plainly put the case upon the basis of negligence. The only significance of the unusual character of the flood is its bearing upon the foreseeability element in negligence. We conclude that where as here the issue is the proper maintenance and operation of a dam constructed with the consent of the legislature, the basis of liability is negligence, and the character of the rainfall simply one of the circumstances bearing upon that issue.

In the light of this, the alleged error with respect to instructions on the question of the special verdict may be examined. The jury was asked whether the rainfall was "greater than an ordinarily prudent and intelligent owner of a dam on the Wausaukee river ought reasonably to anticipate might occur." This question probably should not have been included in the special verdict as it simply constituted a splitting of the issue of negligence or a cross-examination of the jury as to that issue. There was also included in the verdict proper questions relating to defendant's negligence: (1) With respect to maintaining openings in the spillway; (2) with respect to the discharge of water through the flume pipe; and (3) with respect to properly maintaining the embankment. These were all answered favorably to defendant under proper instructions; so also was the first question. The three questions with respect to defendant's conduct fully covered the issue of negligence, and as we have said, the first question merely asked the jury to consider separately a fact bearing upon the element of foreseeability. Having been submitted, it was proper to assign plaintiff the burden of proof with respect to it. The question was nothing more than a minutely subdivided inquiry into defendant's negligence, and as to that issue, certainly plaintiff had the burden of proof.

The inclusion of the question in the special verdict was not prejudicial to plaintiff.

These conclusions dispose of several substantial contentions which, being grounded upon a theory of liability which this opinion repudiates, must fall with the fall of the theory itself, and call for no separate discussion.

We now reach an issue which has been reserved to this point, although logically it might perhaps have been treated earlier in the opinion. Plaintiff contends that defendant did not have a permit to build this dam and that it must be treated as a wholly unlawful structure. Plaintiff contends that defendant merely had from the public service commission an approval of its plans under the milldam law, secs. 31.31 to 31.33, Stats., incl., whereas the river being navigable in fact and law, it required a permit under sec. 31.07 and in the absence of such a permit, the dam is a wholly unlawful structure which not only renders defendant absolutely liable under sec. 86.02, but liable for treble damages as provided by that section. Included in this contention is the claim that the railroad commission had no jurisdiction to approve plans, or preliminary to that, to make a finding that the stream was not navigable. Reliance is had upon *Nekoosa-Edwards Paper Co. v. Railroad Comm.* 201 Wis. 40, 46, 48, 228 N. W. 144, 229 N. W. 631, in which it is stated with respect to a stream that "once shown to be navigable in its natural state, it is presumed to be navigable and 'forever free.'" In the same case, however, it was stated:

"The appellant further contends that the railroad commission did not have power or jurisdiction to determine the navigability of the stream. The appellant sought a permit from the commission to build a dam across the stream. The right of the commission to issue the permit depended upon the fact as to whether or not the stream was navigable. As a necessary incident of its jurisdiction to grant the permit requested, the commission had jurisdiction to find the fact as to navigability of the stream."

In *Angelo v. Railroad Comm.* 194 Wis. 543, 217 N. W. 570, it is stated that whether a given body of water is navigable is, in the absence of a legislative declaration, a question of fact. Had defendant applied for a permit under sec. 31.07, Stats., to build a dam over what he supposed to be a navigable stream, certainly the commission would have the jurisdiction under these authorities to determine that the stream was or was not navigable. For the same reason, when defendant sought approval by the commission under sec. 31.31 of its plans to build a dam over a nonnavigable stream, the commission had the same fact-finding jurisdiction and by its approval of the plans it found that Wausaukee river under sec. 31.31 "is not navigable in fact." Neither order of the commission approving the plans nor the finding supporting it is subject to collateral attack in this action since the fact-finding function was within the scope of the commission's powers and there is no claim that the approval was fraudulently given or procured. In this connection see *State ex rel. Allen v. Railroad Comm.* 202 Wis. 223, 231 N. W. 184; *Town of North Hempstead v. Public Service Corp.* 199 App. Div. 189, 191 N. Y. Supp. 394; *Public Service Comm. v. City of Indianapolis,* 193 Ind. 37, 137 N. E. 705.

For the foregoing reasons we conclude:

(1) That the construction of the dam was authorized;

(2) That the structure was not unlawful;

(3) That sec. 86.02, Stats., has no application;

(4) That the sole issue was defendant's negligence in maintaining and operating the dam;

(5) That there was evidence to sustain the jury's answers favorably to defendant upon this issue;

(6) That no prejudicial error was committed by the court.

*By the Court.*—Judgment affirmed.