Melvin **GRIFFETH** and Lois D. Griffeth, Appellants,

v.

**UTAH POWER & LIGHT COMPANY,**
a corporation, Appellee.

No. 13611.

United States Court of Appeals
Ninth Circuit.

May 9, 1955.

Pope, Circuit Judge, dissented.

Andersen & Andersen, Pocatello, Idaho, Newel G. Daines, Logan, Utah, L. Delos Daines, Salt Lake City, Utah, for appellants.

Charles L. Ovard, Ray, Quinney & Nebeker, Paul H. Ray, Salt Lake City, Utah, A. L. Merrill, Pocatello, Idaho, for appellee.

Before HEALY, POPE and FEE, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

The Griffeths own lands and are lessees of other lands in Franklin County, Idaho, through which the Bear River flows. The Utah Power & Light Company is engaged in the generation and sale of electric current in public service. The company has for more than twenty-five years maintained and operated plants and dams upon the Bear River in the manufacture of such electricity. Thereby, for that purpose, the waters have continuously been impounded, stored and released in accordance with the necessities of such an operation, causing the stream to fluctuate as it has flowed through its natural channel. One of the facilities of the company was the Oneida Power Plant and dam located some miles above the lands occupied by the Griffeths. Several other creeks flowed into the Bear River between the plant and these lands. During the winter, ice forms in this area and in the beds of the streams, including the Bear.

The Griffeths, as plaintiffs, claimed in their original complaint that a parcel of land owned by them was flooded by carelessness of defendant in discharging quantities of water, which overflowed its banks at a point where it passes through the lands of plaintiffs to their damage in several particulars, and that defendant had been warned of the consequences of its acts. Defendant filed answer and pleaded, among other defenses, that plaintiffs' complaint did not state a claim upon which relief could be granted, a general denial and the grant from a predecessor of plaintiffs in title of a perpetual easement for flooding these particular lands by fluctuation of the river in the operation of the plants. Defendant also filed a motion for summary judgment, supported by affidavits. The court granted the latter motion only in part, holding that plaintiffs were bound by the release and easement agreement and operation in accordance therewith.

Subsequently, the cause came on for trial. Plaintiffs moved to amend the complaint by alleging that defendants for five days before the overflow "carelessly and negligently discharged into" the stream quantities of water above normal flow so that "the banks of said river" about forty rods from the property line of plaintiffs were unable to contain the water which flowed first over other lands and then over plaintiffs' parcel, for the reason that defendant had previously discharged water which froze in the bed and the subsequent discharges overflowed at that point, notwithstanding defendant had notice and had been warned the continued discharge above

normal flow would flood the lands of plaintiffs. There was included in the amendment a claim for damages to other lands which plaintiffs leased. Defendant objected to the amendment since summary judgment had been granted on the original parcel. The record shows as follows:

Counsel for defendant said:

" * * * we found that we have an easement to this land, the same easement. We feel that under the conditions we are entitled to a summary judgment—

* * * * * *

"The Court: Will counsel for the plaintiff admit that they have such easement?

"Mr. Anderson: It is my understanding.

"The Court: I will permit the amendment but the issues will be limited to the question of the abuse of the easement."

As a result of this colloquy, the order thus established certain facts as to both parcels and left one issue for trial. Both parties complain of this ruling of the court on motion for summary judgment. Plaintiffs assign that the trial court "erred in sustaining defendant's motion for summary judgment to the effect that defendant had an easement permitting it to flood plaintiffs' land."

The chief basis of the ruling of the court was an affidavit as follows:

"J. A. Hale, being first duly sworn upon his oath, deposes and says:

"That he is a resident and citizen of the City and County of Salt Lake, State of Utah, and over the age of twenty-one years.

"Affiant was graduated from the Virginia Polytech Institute in 1911 with a degree of Civil Engineer, and at all times since then has pursued his profession as an engineer.

"In the year 1913 affiant became an employee of defendant, Utah Power and Light Company, as a civil engineer. He continued in such employment until the year 1923 when he became Assistant Chief Engineer of defendant company, which position he continued to occupy until the year 1926 when he became the Chief Engineer for defendant company. He continued to be the company's chief engineer until the year 1937 when he was made Vice President of the defendant company in charge of engineering, which position affiant has at all times since 1937 held and now occupies.

"Affiant was and is familiar with the construction of defendant's Oneida Dam and Power Plant which was built upon the Bear River in Franklin County, Idaho, in the years 1913 to 1920, and which is referred to in plaintiff's complaint.

"Affiant further says that he has at all times since the construction of said dam been personally familiar with said dam, and personally familiar with the operation thereof. Said dam and power plant was built for the purpose of impounding waters of the Bear River and employing the waters of Bear River for the generation of hydroelectric power.

"Affiant further says that on and prior to the 22nd day of December, 1926, the lands referred to and described in plaintiff's complaint were the property of George Thomas and Anna E. Thomas, his wife. Prior to December 22, 1926, George Thomas and Anna E. Thomas asserted a claim against defendant company and demanded damages from defendant company for the alleged flooding of the lands referred to and described in plaintiff's complaint. The claim so asserted against defendant company by George Thomas and Anna E. Thomas was compromised and settled, and on December 22, 1926, George Thomas and Anna E. Thomas signed, executed and delivered to defendant company a release and easement in words and figures, as follows:

"Inst. No. 27690

"Release and Easement

"This agreement made and entered into this 22 day of December, 1926, by and between Utah Power & Light Company, hereinafter referred to as 'Grantee,' and George Thomas and Anna

E. Thomas, his wife, hereinafter called 'Grantors,' witnesseth:

"That for a valuable consideration, the receipt of which is hereby acknowledged, the Grantors above named hereby release and discharge Utah Power & Light Company, its successors and assigns, from any and all claims for damages to the lands, crops, or other property of the Grantors heretofore caused by flooding or by the impounding or storage of the waters of Bear River, or by the fluctuation of the flow of said river, or by deposit of ice thereon, or otherwise, and/or due to the maintenance or operation of Grantee's Oneida Power Plant or other plants operated by said Grantee on said Bear River:

"And for said consideration, above named Grantors, their successors and assigns, hereby grant unto said Utah Power & Light Company, its successors and assigns, an easement for the right to continue as aforesaid the manipulation and fluctuation of the flow of said river as it passes in its natural channel through or along the lands owned, claimed or possessed by the Grantors, located in Section 17, Township 15 South, Range 39 East B.B. & M., particularly including, but not limited to the following land, to-wit:

"The Southeast Quarter of the Northwest Quarter, the East half of the Southwest Quarter and the Southwest Quarter of the Southwest Quarter of Section 17, Township 15 South, Range 39 East B.B. & M., excepting approximately 10 acres heretofore transferred to the Riverview Sanitarium Company, containing 150 acres, more or less.

"And for said consideration any damages that may result from future flooding or depositing of ice on said land caused by the fluctuation of the flow of said river in the normal operation of Grantee's plant or plants, up stream from Grantor's land, are hereby waived and released, provided future fluctuations shall not exceed those heretofore occurring in the operation of said Oneida plant.

"In witness whereof, the parties have hereunto set their hands this 22 day of December, 1926.

"George Thomas
"Anna. E. Thomas
"Witness,
"Flora Eliason.
"State of Utah,
"County of Salt Lake——ss.

"On this 22d day of December, 1926, before me William Lindsay, a Notary Public in and for the State of Utah, personally appeared George Thomas and Anna E. Thomas, his wife, known to me to be the persons whose names are subscribed to the within instrument, and duly acknowledged to me that they executed the same.

"In witness whereof, I have hereunto set my hand and affixed my notarial seal the day in this certificate first above written.

"(Seal)        William Lindsay
"Notary Public, Residing
at Salt Lake City, Utah.
"My commission expires 5/10/30."

"Said release and easement was duly verified and acknowledged by George Thomas and Anna E. Thomas before William Lindsay, a Notary Public, and the same was thereafter duly recorded in the office of the County Recorder of Franklin County, Idaho, on the 11th day of January, 1927, in Book 5 of Miscellaneous, at page 43.

"The lands referred to and described in said release and easement included the lands referred to and described in plaintiff's complaint.

"Affiant further states that in the month of December, 1948, and the month of January, 1949, he was familiar with the operation of the Oneida plant of the defendant company, and that the same was operated normally and in the same manner in which it was operated prior to December 22, 1926.

"Affiant further states that fluctuations of the Bear River by reason of the use and operation of the Oneida Dam were no greater in the months of December, 1948, and January, 1949, than were

the fluctuations which occurred prior to December 22, 1926.

"/s/ J. A. Hale."

Two affidavits were filed by plaintiffs on these issues. Evelyn Griffeth set out in one that she had lived on land adjoining the Griffeth parcel in controversy and that the river had not overflowed the latter in forty-five years, with the exception of the incident of which complaint is here made. Also, there was an affidavit of Edward Griffeth, the fee owner prior to plaintiffs, that he was in possession of these premises under a partially paid contract to purchase from George E. Thomas and his wife for two or three years before December 22, 1926, the date of the conveyance of the easement to defendant, that the parcel had never been flooded during the time of his possession, and that he knew nothing of the grant and did not consent to it. Neither of these suggestions raised a genuine issue of material fact. The last affidavit neither sets forth the contract under which Edward Griffeth now claims to have been in possession nor does there appear any statement of its terms or conditions. It nowhere is shown that the affiant claims the deed issued to him many years later was pursuant to the contract he claimed in 1926 or in continuation of a possession he claimed he then held. No continuity is alleged or claimed. Counsel for plaintiffs impliedly admitted the existence of the grant as to the lands owned by plaintiffs, and expressly admitted the existence of a similar easement over the other parcel which was leased by them. No affidavit or testimony was offered touching the latter by plaintiffs. Other affidavits showed other circumstances. The deed to Edward T. Griffeth, signed and acknowledged by the above named George Thomas, grantor, and Anna E. Thomas, his wife, which conveyed the same piece of land, was signed August 10, 1935, acknowledged November 6, 1935, and recorded March 15, 1941. The deed to plaintiffs Melvin Griffeth and Lois D. Griffeth from Edward T. Griffeth and Lillian B. Griffeth to the same property was acknowledged September 19, 1946, and placed of record September 27, 1946. It is thus apparent that there was nothing to controvert the existence of the instrument granting the easement, the due execution thereof in 1926 by the then holders of the fee title, George Thomas (deceased in 1951) and Anna E. Thomas, his wife, or the filing thereof in the public records.

■ Since the grant of easement was thus established and was binding upon plaintiffs,[1] the recital of a previous overflow and the circumstance of damage constituted an estoppel of record.[2] The affidavit of Hale, based on personal knowledge, also contains a positive assertion as to this basic incident and the circumstances under which the grant was made. No direct denial thereof appears in the affidavits or testimony. It was not overcome by generalities of a negative character based upon the statements of persons who indicate the lands were not overflowed to their knowledge but who do not deny the specific incident. It was also an uncontroverted fact that water had been fluctuated at the dam in exactly the same manner at the time of the flooding upon which the complaint is based as it had been during the period prior to the date of the grant.

There were also other facts established and uncontroverted. The Oneida plant was in normal operation in December, 1948, and January, 1949, at the times of the damage of which complaint

1. The Idaho Code 1948, § 55–811, provides that the recording of an easement will constitute constructive notice to subsequent purchasers, and that a prior conveyance will be void as against a subsequent bona fide purchaser for value who first records, § 55–812.

2. For a discussion of the elements required to raise an estoppel, see Little v. Bergdahl Oil Co., 60 Idaho 662, 95 P.2d 833. Cf. Allen v. Laudahn, 59 Idaho 207, 81 P.2d 734. The inaction and acquiescence in failing to move against the grant which was a cloud on their title is of considerable importance in this connection.

is here made. The operation thereof at that period was in the same manner in which that facility had been operated before December 22, 1926. But it is said the language of the instrument relating to normal operation applies only to a covenant personal to the Thomases, the grantors, whereby damages "that may result from future flooding or depositing of ice on said land" are waived. If that were true, the sole limitation of the instrument, "provided future fluctuations shall not exceed those heretofore occurring in the operation of said Oneida plant," would not apply to the grant either. Both of these conclusions are rejected. The normal and identical operation of this plant at each critical period was therefore pertinent and uncontroverted. But there is the claim, which the whole context does not bear out, that "fluctuations * * * occurring in the operation of said Oneida plant" are not those which occur at the dam, but rather those which occur on plaintiffs' land. The instrument, after providing for fluctuations in the operation of the dam, does provide for the right to continue as aforesaid "the manipulation and fluctuation of the flow of said river as it passes in its natural channel through or along the lands owned, claimed or possessed by the Grantors."

There is the direct and positive statement of Hale, above set out, that "the fluctuations of the Bear River by reason of the use and operation of the Oneida Dam" were no greater in the time of which complaint is made than during the critical period before the date of grant. Plaintiffs filed no affidavits making an issue of the amount of fluctuation on their lands or elsewhere. The facts were thus uncontroverted. No testimony of the variation of fluctuations at these lands or elsewhere was introduced at trial. There was no genuine issue developed on this point. On the other hand, the material part of the grievance of plaintiffs, as subsequently developed, was that, whatever the alternating or irregular undulations back and forth or up and down, there was an overflow caused by an obstruction of ice. The words "as aforesaid" in the instrument refer to a previous clause describing the operations and overflow resulting therefrom and the consideration paid for the grant to defendant "to continue" the maintenance and operation of the Oneida plant and other Bear River plants notwithstanding damages to the lands or other property of plaintiffs "caused by flooding * * * or by the fluctuation of the flow of the said river, or by deposit of ice thereon, or otherwise" due thereto. It is obvious, manipulation and fluctuation of the river in the operation of the plant would have more or less effect as it passed through lands of plaintiffs.

■ The easement must be construed against successors of the grantor,[3] since it was not gratuitous, but one for which consideration was given and compensation paid. The parties, furthermore, must have construed the instrument in the light of the conditions prevailing at the time it was made.[4] It was acquired because of an overflow caused by icing conditions in an Idaho winter, which suggested recurrence in the future. The plants and dam had then been in operation for several years. The "dam and power plant was built for the purpose of impounding waters of Bear River and employing the waters of the Bear River for the generation of

3. "* * * When the terms of a grant are doubtful, the grantee may take the language most strongly in his favor." Missionary Society of Salesian Congregation v. Evrotas, 256 N.Y. 86, 175 N.E. 523, 524. "* * * must be construed most strongly against the grantor, and most favorably to the grantee, so as to confer the largest estate which a fair interpretation will permit." Lone Star Gas Co. v. Childress, Tex.Civ.App., 187 S.W.2d 936, 939. McIntire v. Marian Coal Co., 190 Ky. 342, 227 S.W. 298. "All doubts * * * are to be resolved against the grantor." 16 Am.Jur., Deeds, § 165, p. 530.

4. Hogan v. Blakney, 73 Idaho 274, 251 P.2d 209, 213.

**668**

hydroelectric power."[5] The parties thus contracted in the light of the public interest in the operation and maintenance of the plants and the dam. It was realized that the manipulation and fluctuation of the river were caused by the nature of the business of defendant in furnishing electric energy to the public, which would require irregular release of water to provide for peak loads. Unquestionably, this was imperative in winter when the natural flow was diminished since the plant could not operate without impounding and releasing more than the then flow of the river to meet demands. The exhibits subsequently placed in evidence as to the period in question emboss and illuminate the conditions which the parties must have contemplated. These exhibits show that the releases of water beyond normal flow are dictated by higher loads which occur at hours when even a layman would anticipate these would fall in order to serve the needs of bordering communities.

The claim, now suggested, that nothing was acquired but the right to send water down the natural channel without overflowing the bank is inconsistent with the situation. The law of Idaho gave the power company the right to fill completely the natural channel of Bear river without any grant. See Idaho Constitution, Article 15, § 3, and Idaho Code, §§ 42–105, 42–801, 52–108. The parties then must have so construed this instrument as granting something further and additional. The idea that the power company did not purchase the right to fluctuate the waters according to necessities of its public business, whatever fluctuations were caused in the bed or upon these lands, is consistent neither with the language used nor the clear purpose requiring a grant. An interesting case, which is illustrative of the absolute needs of public service plants and the policy of a semi-arid state

as a result, is found in Jeffers v. Montana Power Co., 68 Mont. 114, 217 P. 652, where no grant was involved. Likewise, our opinion in the case of Johnson v. Utah Power & Light Co., 9 Cir., 215 F.2d 814, holds that the release of water filling the bed of a natural stream is, because of like policy in Idaho, not a nuisance,[6] and that one inconvenienced or damaged by this use of the natural channel to its capacity by a power company has no remedy because of the paramount public interest.

█ The trial court, upon the basis of the established grant and the uncontroverted affidavits, had the power[7] to narrow the issues by finding certain "material facts exist without substantial controversy". There was no error in this ruling.

Any facts so found would be a part of the background of the case in the same manner as allegations pleaded by defendant and undenied by plaintiffs. Such facts would require neither further allegation nor proof by either party. Certainly, defendant had no further burden in regard to these matters. Defendant therefore took the position in the trial court, which it has consistently maintained since, that a summary judgment upon the whole case should have been granted. A cursory examination of the uncontroverted facts convinces that there is signal merit in this contention.

█ However, the trial judge was entirely accurate in holding there was still an issue for trial. The complaint alleged negligence by the defendant. Under the federal system of pleading, this was sufficient. Even if defendant had an absolute right, under the principle that one must not use even vested property in such a manner wrongfully or negligently to injure another, there was a cause of action stated. This unquestionably made a genuine issue of material fact

5. See the affidavit of J. A. Hale, supra, 226 F.2d 664, 665.

6. "Nothing which is done or maintained under the express authority of a statute

can be deemed a nuisance." Idaho Code 1948, § 52–108.

7. Rule 56(d) Federal Rules of Civil Procedure, 28 U.S.C.A.

upon which plaintiffs were entitled to a jury.[8] No matter how convenient it may have been for defendant or the trial court to have disposed of the whole case by finding the fact established by the uncontroverted affidavits of defendant, the ruling would have been error.[9]

The trial court was vested with no discretion. The federal Constitution gives a right of jury trial in a contested issue in a law action.[10] This right is positive and should not be whittled away by decision of contested issues by the judge at hearings in camera before trial. The summary judgment rule does not confer this power even in a non-jury case.[11] The remedy can be invoked only when complete absence of genuine fact issue appears on the face of the record. Resort to summary judgment procedure is futile where there is any doubt as to whether there is a fact issue. All doubts upon the point must be resolved against the moving party.[12] This Rule, on account of these limitations, was not intended to be used as a substitute for a regular trial of cases where "there are disputed issues of fact upon which the outcome of the litigation depends."[13] This procedure is not, and of right ought not to be, a substitute for a trial by jury or judge. Plaintiffs had set up a claim of the negligence of defendant in respect to the release of water through their land. The defendant controverted the negligence. Even if the trial court believed there was no chance of recovery, he was bound to try out the issue thus contested.[14] This is true even though the court may have believed some one issue was decisive.[15]

Instead of following the course insisted upon by defendant power company, the trial court entered an order finding the easement a valid grant binding upon plaintiffs. The facts set out in the affidavit of Hale as to the operation of the dam in the same manner as when the grant was made were also accepted as uncontroverted because the court refused to strike any of these allegations of the affidavit, thus holding them established by failure to deny. This was a holding that the grant applied to the

8. "The defendant's denial of the essential allegations of the complaint, even if there were no other defenses interposed, is a valid defense on which it has a right to be heard." Zig Zag Spring Co. v. Comfort Spring Corporation, D.C., 89 F. Supp. 410, 413.

9. "There is no authority in the court to summarily try the factual issues in advance of trial on the affidavits and the depositions of the witnesses." Zig Zag Spring Co. v. Comfort Spring Corporation, D.C., 89 F.Supp. 410, 412.

10. "It must not be forgotten that, in actions at law, trial by jury of disputed questions of fact is guaranteed by the Constitution, and that even questions of law arising in a case involving questions of fact can be more satisfactorily decided when the facts are fully before the court than is possible upon pleadings and affidavits." Stevens v. Howard D. Johnson Co., 4 Cir., 181 F.2d 390, 394. " * * * the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Estepp v. Norfolk & W. Ry. Co., 6 Cir., 192 F.2d 889, 893.

11. Porter v. Barrett, D.C., 89 F.Supp. 35, 43.

12. "Resort to the remedy where there is any doubt is futile because it is now well settled that all doubts on this preliminary issue must be resolved against the moving party. The rule can be made to fulfill its purpose if it is invoked only in appropriate cases, and these are not too numerous." Zig Zag Spring Co. v. Comfort Spring Corporation, D.C., 89 F.Supp. 410, 414.

13. Broderick Wood Products Co. v. United States, 10 Cir., 195 F.2d 433, 436.

14. "A surmise or belief, no matter how reasonably entertained, that a party cannot prevail upon a trial, will not justify refusing him his day in court with respect to material issues which are not clearly shown to be sham, frivolous, or so unsubstantial that it would obviously be futile to try them." Ford v. Luria Steel & Trading Corporation, 8 Cir., 192 F.2d 880, 882. Landy v. Silverman, 1 Cir., 189 F.2d 80.

15. For examples, see Huff v. Louisville & Nashville Railway Co., 5 Cir., 198 F.2d 347; 598 Cases v. United States, 7 Cir., 211 F.2d 249; Stevens v. Howard D. Johnson Co., 4 Cir., 181 F.2d 390.

control of the water at the dam, even though its necessary fluctuation there resulted in flooding of the land and obstruction of released water by ice. As noted above, this was a correct interpretation of the written document within the province of the court. The summary judgment rule provides that, where the trial court cannot grant such relief upon the whole case, it may construe written documents and find a fact or facts established beyond controversy.[16]

The purpose of pre-trial conferences, of which the partial summary judgment procedure is one, crystalizes uncontroverted facts beyond debate. The entire purpose is to shorten the trial by defining the issues, so that no contest as to the facts so settled could be held later before the jury.

In any system of pleading, admitted facts form the groundwork for the definition of issue. In the older systems, "facts" properly pleaded and undenied were accepted as established. Under the federal Rules, affidavits cannot be used as proof where an issue has been made by the pleadings or pre-trial order. Under pre-trial or summary judgment procedure, the affidavits serve the same purpose as the allegations of the pleading. Here the affidavit of Hale was an extension of the answer. When these "facts" were thus uncontroverted and uncontroverted and undenied, no issue existed as to them. Here the grant was so established. Here it was established that the defendant had fluctuated the water at the dam in exactly the same manner at the time of the flooding of plaintiffs' land as it had been doing during the period before the date of the grant, thus negativing a possible exception.

After permitting the amendment of the complaint to include other lands and the admission that similar grants applied to both parties, the trial court held there was an issue for trial. The situation next required that the remaining issue be defined.

At this point, in an amended complaint under the former system of pleading with the facts above enumerated thus admitted, plaintiffs would have been required to specify what acts it was contended it did or what it had omitted to do.

Thereafter, in the face of this order, plaintiffs amended the complaint to set up their version of the negligence then claimed. These allegations did not mention the easement, but set up that defendant negligently released water into the stream bed in such quantity beyond the normal flow that the bed above plaintiffs' property could not contain it and that the water previously discharged had frozen and, although defendant was warned that release of further water would cause flooding, continued the operation and plaintiffs' lands were flooded thereby.

The argument that the facts set up in the affidavit of Hale, although uncontroverted, did not narrow the issue is not in accordance with the spirit of pre-trial procedure. The Hale affidavit is not used as proof, but to define the issues.

■ The remaining issue, as paraphrased by the trial court, was whether the defendant "abused the easement," saying, "The parties have the easement, but the fact that they have would not permit them to do anything wrongful or negligent." As a precaution, it would have been well to have entered a definitive order showing what facts were accepted as established and exactly stating the questions still to be determined. In that event, plaintiffs would have been required to state what was the wrongful act or omission which they claimed over and above the periodic release of water from the dam in accordance with the easement. In effect, that is what was done. Perhaps more formality might have been observed here. However, appellate courts should not seize upon procedural shadings in order to reverse cases properly decided. To hold the issues were not narrowed would set procedure

16. Rule 56(d), Federal Rules of Civil Procedure.

up as a fetish. There is no doubt, all counsel understood that the remaining issue was whether there was a wrongful act or negligent omission, accepting as true that the water had been released by defendant at the dam in accordance with regular custom and in accordance with the terms of the grant of the easement.

A jury was impaneled, but, after the production of considerable evidence, the court granted a directed verdict for defendant. From this adverse judgment, plaintiffs appeal.

■ Plaintiffs did not prove defendant did any wrongful or negligent act or made any wrongful or negligent omission, much less any one specified in the amended pleading. The burden of proof was upon them once the grant was an established fact.

In Bruns v. Willems, 142 Minn. 473, 172 N.W. 772, the court held that a written grant was to be construed by the court, and any ambiguity in the document was to be resolved in the light of the surrounding circumstances. The Minnesota court also held that the burden lay upon the one claiming abuse of the grant to establish the fact by a preponderance of the evidence.

"That being so, there must be a judgment in defendant's favor * * * unless defendant, by the work done upon the land subject to this right of way easement, wrongfully invaded plaintiff's rights.

"It is the contention of plaintiff that, even if defendant had an easement, it was merely that of passage; hence, if he disturbed the sod or altered conditions, it was necessary by pleading and proof to justify his acts as being necessary in order to make the road usable and fit for travel. * * * We think plaintiff's contention as to the pleading and burden of proof not well founded. It appearing that the locus in quo is a right of way easement, in order to charge the owner of the easement with trespass, on account of work thereon, the owner of the servient estate has the onus of showing that the work was not a proper improvement of the road, and was not made with due regard for his rights. The interests of both the servient and dominant estate must be considered in the use made of an easement." 172 N.W. at page 774.

■ In accordance with this principle, plaintiffs were bound to prove defendant did something wrongful or used its established right in a negligent manner.[17] A perpetual right to overflow land is an interest in realty and must be created, as it was in this case, by instrument in writing. Schwab v. Smuggler-Union Mining Co., 8 Cir., 174 F. 305. A grant by deed of a right to an upper owner to deposit tailings, waste material and debris from mining operations into a stream, so that such materials were carried onto the lands of a lower proprietor, was held an absolute defense to an action for damages. The court say, "An agreement to modify this relationship by an increased burden upon the lower riparian owner in favor of the upper riparian owner would seem clearly to constitute an easement in the land of the lower riparian owner." Luama v. Bunker Hill & Sullivan Mining & Concentrating Co., 9 Cir., 41 F.2d 358, 360.

In this case, no breach of the contract by defendant was shown. The action was in tort necessarily. In Jones v. South Carolina Power Co., 191 S.C. 419, 4 S.E.2d 625, 629, there was a claim that

17. "If grantee exercised the rights conferred in the conveyance with due care and without negligence, then no damages were recoverable. * * * The burden rested upon * * * [plaintiffs] to allege and prove that the gas company was guilty of negligence in this respect." Lone Star Gas Co. v. Hutton, Tex.Com. App., 58 S.W.2d 19, 21. " * * * the owner * * * must show that the defendant was guilty of negligence in the manner in which it was used." Texas Power & Light Co. v. Casey, Tex.Civ. App., 138 S.W.2d 594, 597–598. See also Town of Wausaukee v. Lauerman, 240 Wis. 320, 3 N.W.2d 362; Burt v. Farmer's Cooperative Irrigation Co., 30 Idaho 752, 168 P. 1078.

a right of way was abused. The court say, " * * * should a grantee commit a trespass by doing something not properly incident to the exercise of the right granted, or exercise the right in a negligent or wanton manner," an action would lie. Recovery was denied in that case because the evidence, while showing a failure to conform to the grant, did not indicate a breach of duty.

The issue remaining was extremely narrow. Breach of contract, nuisance and trespass were not involved. Plaintiffs' complaint and entire course of action show that the only reliance was upon negligent action of the defendant. Plaintiffs were definitely advised by the court that proof of something negligent or wrongful in the handling of the defendant's property right in plaintiffs' land would be required in order to show abuse of the grant. The power company had purchased and paid for the easement. Plaintiffs could not complain of the use of this servitude incumbent upon their land by the defendant to the full extent of the conditions laid down in the instrument and in the light of the necessities in the public interest. Plaintiffs' device of refusing to mention the instrument in their proof and proving incidents of normal use of the property right which the defendant held would not avail.[18]

The main reliance of plaintiffs was upon the testimony that on the third or fourth of January Melvin Griffeth saw the unusual rise of the river onto these lands and notified the company that, if the conditions continued, the land would be flooded. He repeated these warnings several times until the complete overflow occurred. The manager of defendant made an appointment to meet him near the place, but did not come. The testimony was that the manager did nothing about the situation and did not seem much concerned. This shows neither negligence nor wrongful act. If defendant had purchased the right to back water up from a dam and overflow lands, which right was conveyed by written instrument, damages could not be awarded against it for performing the act it had purchased a right to perform.[19] To put it more concretely, if defendant had bought the right to erect a dam twenty feet in height in a dry creek bed and out of precaution purchased a flowage easement upon real property several miles up the bed, which might be covered in the contingency of a cloudburst, the upper owner could not recover damages even if the basin filled first with water after twenty-five years and overflowed his land. No one would contend reasonably that a recovery could be allowed even if the upper landowner had

18. If the easement had been claimed by *prescription*, instead of by grant as it was, a jury question would have existed and defendant would not only have been required to prove the *existence* of the easement, but its *nature* and *extent*. "Where a party justifies his act under an easement by prescription the burden is upon him to prove, not only that an easement exists, but also that it is broad enough to cover the thing that he has done." Fortier v. H. P. Hood & Sons, Inc., 307 Mass. 292, 30 N.E.2d 253, 256, 257. See also Roediger v. Cullen, 26 Wash.2d 690, 175 P.2d 669. Here the establishment of the grant by written instrument left no question on this phase.

19. " * * * where a complaint is claiming for something embraced in the right-of-way, or reasonably incidental thereto, that complaint has no standing in Court * * *." Jones v. South Carolina Power Co., 191 S.C. 419, 4 S.E.2d 625, 627. " * * * it is to be presumed that the grantors assented to bear all loss * * * which incidentally resulted from the exercise of those rights in a proper manner." Lone Star Gas Co. v. Hutton, Tex.Com.App., 58 S.W.2d 19, 21. " * * * the grantee cannot be held responsible in damages for exercising its right * * *." Pike-Floyd Coal Co. v. Nunnery, 232 Ky. 805, 24 S.W.2d 614, 615. "If appellant did what it had a right to do under the grant in a lawful way * * * it cannot be held liable for damages." Elk Horn Coal Corporation v. Johnson, Ky., 249 S.W.2d 745, 746. "It is also given the right in the deed to remove the support in the mines, and plaintiff cannot complain of its action in so doing." Case v. Elk Horn Coal Corporation, 210 Ky. 700, 276 S.W. 573 574.

warned defendant of the fact that his land would be overflowed if the defendant did not allow the flashboards to be raised and the impounded water to be released. But this supposititious case recited above would involve a direct and intentional invasion, whereas in the case at bar negligence must be affirmatively proved.

There was considerable proof that this land had never overflowed before from the operation of the defendant's plant and dam. The court held this evidence immaterial, as it was. The easement would not be lost by nonuser even for a period of twenty-five years.[20] There was no evidence offered which was in positive contradiction of the fact that there had been an overflow immediately prior to December 22, 1926, as the instrument recites. As the defendant had purchased the right to overflow plaintiffs' lands under such conditions, it had the right to make use of the easement. The question of overflow was not in issue. The only pertinent issue was the amount of fluctuation resulting from the operation of the dam and plant of the defendants, upon which no evidence was introduced. There was no proof that the overflow may not have been caused by ice jams breaking and releasing water in tributaries of the Bear between the plant and the lands of plaintiffs.

Defendant purchased the right to deposit ice on the lands of plaintiffs in the normal operation of its plant. Plaintiffs did not prove that ice so deposited was not the cause of the overflow. Further, plaintiffs did not prove that the water flowing over the ice came from a release of defendant or from one of the tributaries of the Bear. There were several miles distance between the dam and the boundary of the lands of plaintiffs. Defendant is not shown to have had any control of conditions thereon and is shown to have done nothing except to release water at the dam according to essential procedures. There is no foundation here for claim of negligence or wrongful act.

It is true that a question of negligence is normally for the jury, but here plaintiffs made no attempt to prove the issue defined by the court. They made no attempt to prove that defendant used its property right in a negligent or wrongful manner. Every circumstance proven in the record is compatible with a normal and proper use of the easement which the predecessors of plaintiffs granted to defendant, by which plaintiffs are also bound. No evidence was tendered showing that defendant had done anything other than what it had a right to do. No causal connection was shown between any act of the defendant and the overflow, much less to any damage suffered by plaintiffs. The trial court was correct in directing the verdict for defendant.

It is inherent in what has been said that the majority of the Court do not believe plaintiffs produced any competent proof that defendant had done anything negligent or wrongful, even though the issue were not deemed to have been defined by the Hale affidavit, the amendment of the complaint and the declaration of the court.

Affirmed.

POPE, Circuit Judge (dissenting).

I think that if the majority opinion is allowed to stand it will be cited as authority for a rule relating to affidavits filed in support of motions for summary judgment which is contrary to much that has been said both in this and in other circuits.

To plaintiffs' amended complaint alleging negligent operation of defendant's dam (and which the court holds was a sufficient pleading), defendant filed an answer including therein as a "separate

---

20. "An easement created by deed is not defeated by mere nonuser." Parsons v. New York, N. H. & H. R. Co., 216 Mass. 269, 103 N.E. 693, 695. "It seems to be well settled that an easement created by deed of grant * * * cannot be proved to have been extinguished by proof only of nonuser, no matter how long such nonuser may have continued." 3 Powell on Real Property, § 423, p. 494 (1954).

and additional defense" allegations that the plaintiffs' predecessors executed and delivered to defendant the release and easement, setting it forth *in haec verba*.

Then followed the motion for summary judgment, accompanied by the Hale affidavit. Plaintiffs filed counter affidavits. Upon this motion the trial court ordered that summary judgment be granted only in part, specifying that it appeared without substantial controversy "that plaintiffs are bound by the release and easement agreement. * * * The summary judgment will be denied subject to the above reservation."

As the majority opinion indicates, it might have been better if the court had specified, in so many words, just what the issues remaining for trial were. I agree that nothing should here turn on any informality at this point. Necessarily the issues were, in the language of the trial judge, whether defendant had "abused the easement", and whether it had done "anything wrongful or negligent." [1]

The first place where the majority opinion falls into serious error is in simply misreading the court's order and importing into it something which the court below most assuredly did not say. The order, exactly as written, is reproduced in the margin, with the operative words of the order emphasized.[2] The majority opinion amends this order by asserting that the part which denies the motion to strike from the Hale affidavit was an acceptance of that affidavit "as uncontroverted". The order did no such thing. This part of the order referred to a motion to strike which, as the record shows, was to strike all of the affidavit "beginning with paragraph 3 to the end of the affidavit." This was *all of the affidavit except Hale's name, residence and occupation.* The part sought to be stricken included the part which set out the written easement. Of course the motion to strike was properly denied. There were not any other motions to strike, and there was no motion to strike separate parts of the affidavits.[3] To say, as do the majority, that the court, by properly denying a motion to strike such an affidavit, thereby makes an adjudication that everything in the affidavit is true, is to my mind unthinkable.

1. This necessity arises not only from the terms of the written easement but from general legal principles as well. The easement was subject to an express condition: "provided future fluctuations shall not exceed those heretofore occurring in the operation of said Oneida Plant." The right granted was a qualified one: "an easement for the right to continue as aforesaid the manipulation and fluctuation of the flow of said river as it passes in its natural channel through or along the lands owned * * * by the grantors." Thus there was necessarily a question of fact whether those January, 1949, fluctuations did "exceed those [before Dec. 22, 1926] occurring in the operation of said Oneida Plant".

And as noted hereafter as well as in the majority's quotation from Jones v. South Carolina Power Co., infra, even if the fluctuations were strictly within the stated limits, liability would arise, if the easement is exercised " 'in a negligent or wanton manner'."

2. "Order—The defendant in the above-entitled cause filed a motion for summary judgment, and argument was had to the Court, following which the Court ordered briefs submitted. Said briefs have been filed and duly considered by the Court. Now, therefore, the Court is of the opinion that *the summary judgment should be granted in part as suggested at oral argument in that plaintiffs are bound by the release and easement agreement.* This can be taken care of at the time of the trial. The summary judgment will be denied subject to the above reservation. In view of the above, the motion to strike certain portions of the affidavit of J. A. Hale in support of the motion for summary judgment will be denied, and it is so Ordered."

3. In what seems to me to be a strained effort to magnify the Hale affidavit into something it was not, the opinion says: "Here the affidavit of Hale was an extension of the answer." I must admit this sounds like something new to me. But what of it? Under Rules 7(a) and 8(d), it must be "taken as denied".

Again, calling upon "the spirit of pretrial procedure", the opinion says, "The Hale affidavit is not used as proof, but to define the issues." I think contrary to the majority, that the trial court assuredly did *not* use the Hale affidavit as proof. It is only the majority opinion that treats it so.

Again the opinion misstates both the record and the law when it says of this refusal to strike: " * * * thus holding them established by failure to deny." This court dealt with a situation not distinguishable from this in Hoffman v. Babbitt Bros. Trading Co., 9 Cir., 203 F.2d 636. There defendant filed affidavits. Plaintiff Hoffman filed none. This court said, 203 F.2d at page 638: "The Hoffmans were under no duty of submitting their evidence to the court upon affidavits, *and the affidavits were not conclusive as to the facts stated therein.*" (Emphasis mine.) The district court in the Hoffman case obviously held that the facts stated in the affidavits, filed by defendant alone, were "established by failure to deny." We held that to be error. Now, if the trial court here held the same way, regard for our decision in Hoffman would require a reversal.

But the situation here, for even more reasons than that, requires reversal. The conclusions of Hale's affidavit on whether the fluctuations on these January, 1949, days were greater than those prior to December 22, 1926, (see footnote 1, supra) were directly controverted by the circumstances set forth in counter affidavits filed by plaintiffs. These disclosed the unprecedented character and extent of the flooding on these January days, and other circumstances similar to those hereafter related where I shall describe the testimony of plaintiffs on this point.[4]

But whether my brethren here have erroneously read the record of the trial court's order to include something which the trial court did not in fact decide, is not, as I view it the essential and fundamental error in their decision. For viewed in either light, that is to say, in theirs or mine, the record discloses that there was a genuine issue of fact upon the question whether at the time of the flooding defendant was violating the express condition of the easement: " * * provided future fluctuations shall not exceed those heretofore occurring in the operation of said * * * plant." That issue, like any other issue, in the ordinary case, must be tried not upon affidavits but upon the sworn testimony of witnesses in open court subject to the usual tests of cross-examination and other checks of credibility. Rule 43 F.R. C.P. Whether Hale was telling the truth or not was a question which under our system was for determination by the jury. His affidavit stated that in the month of January, 1949, "He was familiar with the operation of the Oneida plant." Just how familiar was he? Cross-examination could be most enlightening, and the cross-examiner would be entitled to ascertain the accuracy of his purported memory as to how the plant was operated prior to December 22, 1926. Neither the trial court nor this court has any right to accept Hale's affidavit upon this point. As stated in F.A.R. Liquidating Corp. v. Brownell, 3 Cir., 209 F.2d 375, 379, "although an affidavit filed in support of a motion for summary judgment may be considered for the purpose of ascertaining whether an issue of fact is presented, it cannot be used as a basis for deciding the fact issue."

If, as the opinion asserts, the trial court in its order accepted the statement of Hale as an uncontroverted fact, the court erred for the reasons stated in Hoffman v. Babbitt Trading Co., supra. If, as I view the order, the trial court merely ruled "that plaintiffs are bound by the release and easement agreement", and ordered the remaining issues tried, then the affidavit of Hale upon the issue of how much fluctuation occurred and how it compared with earlier fluctuations must be laid aside as no proof whatever. If was *functus officio.*

Notwithstanding no single witness was called or testified on behalf of the defendant upon the issues here for trial,[5]

4. This was testimony which would warrant the jury in disbelieving Hale's statement, had he given it on the stand.

5. The record shows that plaintiff, who had propounded interrogatories to defendant under Rule 33, called Hale,

the majority opinion treats the Hale affidavit not only as proof, but as establishing "uncontroverted" facts. Says the opinion: "The affidavit of Hale, based on personal knowledge, also contains a positive assertion as to this basic incident * * *. No direct denial thereof appears in the affidavits or testimony. * * * It was also an uncontroverted fact that water had been fluctuated at the dam in exactly the same manner * * * as it had been during the period prior to the date of the grant."

Where does the court find this "uncontroverted fact"? No witness so testified. As the opinion discloses, the court takes all this from the Hale affidavit and from no other source. This flies in the face of a multitude of decisions such as that in Hoffman v. Babbitt Bros. Trading Co., supra, where we said, 203 F.2d at page 638: "The Hoffmans were under no duty of submitting their evidence to the court upon affidavits, and the affidavits were not conclusive as to the facts stated therein." Here, the court, in deference to the accepted rule, should have said: "The Griffeths were under no duty of submitting their evidence to the court upon affidavits, and the Hale affidavit, upon the issues remaining for trial, *was not evidence at all*." To use the language of F.A.R. Liquidating Corp. v. Brownell, supra, "it cannot be used as a basis for deciding the fact issue." [6]

Wholly overlooking our statement in Hoffman v. Babbitt Bros. Trading Co., supra, that the plaintiffs there "were under no duty of submitting their evidence to the court upon affidavits," the court here reverses that by saying: "There is the direct and positive statement of Hale, above set out * * *. Plaintiffs filed no affidavits making an issue of the amount of fluctuation * * *." In the Hoffman case we called

attention to the fact that had the case been tried upon oral testimony as it should have been, "the affiants would probably be called to the stand for examination and cross-examination." Here Hale, an interested, and presumably biased witness, never called by defendant, nor subjected to cross examination, filing what the court characterizes as "uncontroverted affidavits", furnishes the basis for a directed verdict! This cannot be right. For, as stated in Arnstein v. Porter, 2 Cir., 154 F.2d 464, 469: "If, after hearing both parties testify, the jury disbelieves defendant's denials, it can, from such facts, reasonably infer access. It follows that, as credibility is unavoidably involved, a genuine issue of material fact presents itself. With credibility a vital factor, plaintiff is entitled to a trial where the jury can observe the witnesses while testifying. Plaintiff must not be deprived of the invaluable privilege of cross-examining the defendant—the 'crucial test of credibility'—in the presence of the jury. Plaintiff, or a lawyer on his behalf, on such examination may elicit damaging admissions from defendant; more important, plaintiff may persuade the jury, observing defendant's manner when testifying, that defendant is unworthy of belief." " '[T]he mere fact that the witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury as a question of fact.' " Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 628, 64 S.Ct. 724, 729, 88 L.Ed. 967.

If I am right in my view that the case must be decided upon the testimony of witnesses, given in open court, with no aid whatever from affidavits, then the solution of our problem is not hard to find. The record shows a substantial

---

defendant's Vice-President to the stand, and after developing that Hale had made the answers, read the interrogatories and answers into the record. None of these amounted to a denial of any of the testimony given on behalf of the plaintiffs.

6. "Such an affidavit may be received in

support of a motion for summary judgment for the very limited purpose of determining whether an issue of fact exists, but it can not be used to decide a contested issue of fact." Lacy v. United States, 7 Cir., 207 F.2d 352, 354.

case for the jury, upon which the jury might properly find (a) that the fluctuations brought about on the dates here in question did "exceed those [before 1926] occurring in the operation" of the plant, and (b) that in any event the defendant exercised its easement in a negligent manner.

Plaintiff's evidence sufficiently disclosed facts from which the jury could infer (a) that the flooding of plaintiff's lands on January 7, 1949 was caused by the fluctuations which defendant made in the flow of Bear Creek; [7] (b) that this flooding was extraordinary and unprecedented, and far exceeded, both in extent and resultant damage, anything which had ever occurred before; and (c) that these fluctuations exceeded those authorized by the written easement.

The suggestion in the majority opinion that "There was no proof that the overflow may not have been caused by ice jams breaking and releasing water in tributaries of the Bear between the plant and the lands of plaintiffs" is something the jury would be free to disregard, for a jury which lives in the cold country knows, and we do too, that such tributaries, unregulated by dams, do not emit freshets during January days like these

when the thermometer registered successively, zero, three above zero, eight below, thirteen below, four above, and two above, on the 2d, 3d, 4th, 5th, 6th and 7th of January. On such days a stream merely freezes harder.

The unprecedented character and extent of the flooding in itself permits an inference that something new in the way of fluctuation control was being tried. Witness after witness testified for the plaintiffs that no such flowage had ever occurred before. Some testified that in earlier years the water overflowed on low sloughs, that there had been some overflow, but nothing like this.[8] Others, like the plaintiffs and members of their families, who lived on this land from the time the dam was built, testified there was never any such flooding before.

Now, if we consider that these "uncontroverted affidavits" are discarded as they should be, it is impossible to say that the jury were not warranted in inferring that the fluctuations exceeded those authorized by the written easement. Indeed, the Hale affidavit on which defendant sought summary judgment shows on its face a complete misapprehension of the terms of the easement. The granting portion thereof

7. The proof of causation was clearly sufficient to carry the case to the jury. Exhibit 7, which was first furnished by the defendant in response to interrogatories, is a chart showing how the flow of the water past the dam varied from day to day. This was a chart made automatically by a recording device which showed the flow of water in certain units. This discloses that the flow was lessened and storage of water behind the dam accomplished during each night and then during the day the water was released and the flow greatly increased. Thus during the night of January 5-6, 1949, in the hours following midnight, the flow was 80 units but at 8 A.M. the flow had jumped to 585 units and it continued at approximately that rate until afternoon when the flow was shut down and tapered off during the afternoon to 93 units and 80 units. But at approximately 5 o'clock that evening the flow being released jumped to 623 units and continued high through the evening but tapered off again to 80 units by midnight. This pattern is shown to have continued

throughout the period from January 1 to January 7 and the whole chart permits the inference that the defendant operated and controlled its dam in that manner throughout the period here in controversy. This constant rising and falling of the water in the stream is manifest from the testimony of the plaintiff who related his conversation with the plant superintendent in which he pointed out that the high water was not there in the morning but that it came up in the evening. This conversation was the third or fourth of January and at the time when plaintiff was vainly attempting to get the superintendent to take enough interest to come down and take a look.

8. "A. On some of the low lands the water would back up,—yes it would back up into the low land that we call sloughs due to the ice blocking the channel of the river but it never got on the land."

"Q. Was there any flooding of the land during those winters? A. No, sir, it blocked some but didn't run on the land like that."

creates "an easement for the right to continue as aforesaid the manipulation and fluctuation of the flow of said river *as it passes in its natural channel through or along the lands owned * * * by the Grantors*". (Emphasis added.) If previous fluctuations, carried the water to say 2000 feet above sea level, this would mark the limit of the granted right of fluctuation " 'as it passes in its natural channel through or along the lands' ". A fluctuation to 2001 feet would be something outside the grant.

But wholly apart from that, even assuming a granted right measured by quantities released at the dam, a jury, after hearing Hale, watching his demeanor, and seeing him cross-examined, would have a right to disbelieve testimony he might give in line with his affidavit. For the record showed and the jury drawn from that district would know that there were other cold winters in the years after the dam was first built in 1913 and prior to December 22, 1926, when the easement was given, and could infer that in those cold streams there was ice in the river. Never before had water flowed over these lands to the depth of a man's armpits, washing away haystacks and drowning cattle, and it is a fair inference that the fluctuations were thus kept moderate because the flow from the dam was regulated with these weather and ice conditions in view, and with a reasonable regard for the situation of the farmers below.

Furthermore as the case was here presented defendant did not bother to call a single witness to explain a situation which cried aloud for explanation. It is my view that the evidence presented made a case for the jury upon the question of whether the defendant abused the easement or violated and exceeded its conditions and limitations even if we assume that the burden of proof was upon the plaintiffs. When defendant pleaded its so-called "third defense" stating the easement and its claim of acts under the easement, it was definitely proceeding on the theory that it was pleading an affirmative defense.[9] It was an affirmative defense. Such is the Idaho rule. Loosli v. Heseman, 66 Idaho 469, 162 P.2d 393.[10] For when plaintiffs showed that notwithstanding their protestations defendant continued to flood their lands by the manner in which it suddenly released larger amounts of water controlled by it, plaintiffs made a prima facie case for damages. Crawford v. Cobbs & Mitchell Co., 121 Or. 628, 253 P. 3, 257 P. 16; Taylor v. Indiana & Michigan Electric Co., 184 Mich. 578, 151 N.W. 739, L.R.A.1915E, 294; Wargo v. Connecticut Electric Light & Power Co., 127 Conn. 629, 18 A.2d 924. The pleading and proof of rights under an easement was up to defendant. This was its burden.

But even if we assume a complete lack of proof that there was an actual violation of the terms of the easement, there was I think an abundance of evidence of negligence on the part of the defendant. Indeed, to my mind the evidence shows a shocking degree of negligence amounting to a ruthless disregard of the rights of the plaintiffs. On January 3 or 4, 1949, plaintiff noticed the unusual flooding of the river; it was on the southern end of his property and had passed the fence. He called Cushman, defendant's manager and superintendent, telling him that the water was flooding his ground and damaging his fence. Cushman said he did not think it was; they never had any flooding in that section before.

9. As a piece of pleading it was wholly defective, for it did no more than plead the written easement. There was no allegation that on the dates in question defendant caused no more fluctuation than that authorized by the easement, or that it complied with the conditions stated therein.

10. Where, as here, the relevant facts are peculiarly within the knowledge of the defendant, the burden of proof should be there. For a discussion of this principle see United States v. Fleischman, 339 U.S. 349, 362, 70 S.Ct. 739, 94 L.Ed. 906; Thayer, A Preliminary Treatise on Evidence at the Common Law, p. 370; Wigmore on Evidence, 3d ed., § 2486, pp. 275 to 276. Further on the rule in Idaho see Johnson v. Twin Falls Canal Co., 66 Idaho 660, 167 P.2d 834, and Kiesel v. Bybee, 14 Idaho 670, 95 P. 20.

Plaintiff asked Cushman to come and look at the situation; Cushman was too busy and did not have a car. Plaintiff offered to take him in his own car, and the parties made an appointment to meet at the company office the next morning. When plaintiff went to Cushman's office he told Cushman again that the water was flowing over the ground and destroying the fence. Cushman said: "We will check into it" and the parties then agreed to meet on the Bear River that night near where the water was flowing. At the appointed time and place Cushman did not appear. Plaintiff talked to Cushman the next morning on the telephone and asked why the latter had not appeared. Cushman replied that he looked that morning from the top of a hill with field glasses and he did not see any water there. Plaintiff told him that the water was not there in the morning; that it came up in the evening. Cushman replied that he looked "this over with field glasses and he did not see any water". Cushman did not seem very concerned.

As I understand the majority opinion it does not question the soundness of the cases collected in Jones v. South Carolina Power Co., 191 S.C. 419, 4 S.E.2d 625, 628,[11] which are illustrative of the principle encompassed by the maxim—*sic utere tuo ut alienum non laedas*. See in accord Baker v. Pierce, 100 Cal.App. 2d 224, 223 P.2d 286. Exhibit 8, in evidence here, was furnished by defendant in response to plaintiffs' interrogatories and shows that throughout the period of time here in controversy it was not only creating daily fluctuations in the natural flow of the stream but was actually releasing on each day from January 3 to January 7, at the very time when plaintiffs were informing defendant of their flood troubles, substantial quantities in excess of the natural flow of the stream.

I think that the trial court utterly disregarded the right of the jury in the exercise of its proper functions to draw reasonable inferences both of negligence and of the abuse of the easement from the evidence adduced by the plaintiffs. The refusal of trial judges and even of appellant judges to permit jurors to exercise this function of applying reason and common sense in drawing inferences from facts proven requires constant correction at the hands of the courts of last resort.[12] "It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences,

11. The case contains the following quotation from Watts v. Norfolk & W. Railway Co., 39 W.Va. 196, 19 S.E. 521, 523, 23 L.R.A. 674: "'Neither a right of way conferred by grant nor one conferred by condemnation will give exemption from damages consequential upon the improper or negligent exercise of the rights, and not from the fair, proper, and reasonable exercise of it, for the reason that neither in making such grant nor in the assessment upon an inquisition are damages contemplated or included that are to be solely attributed to such misuse of the right.'" The court also quotes from Sims v. Ohio River & C. Railway Co., 56 S.C. 30, 33 S.E. 746, 748: "'A railway company may acquire the legal right to construct a road over the lands of another, but it must be built with ordinary care, without negligence.

If damage result from such negligent act on the doing of lawful work, the company must respond, and, in a suit like this, whether an act is negligent is a question of fact.'"

12. Two interesting and even striking illustrations of cases in which courts of appeals have been reversed for denying the exercise of this function by the triers of fact are found among the decisions handed down during the present term of the Supreme Court. They are Williams v. Carolina Life Insurance Co., 348 U.S. 802, 75 S.Ct. 30, summarily reversing the Fifth Circuit, and McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, reversing a decision of the Second Circuit, 207 F.2d 952, which had rejected reasonable inferences drawn by the trial judge "upon balance of the probabilities."

judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. * * * That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." Tennant v. Peoria & P. U. R. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520.

I think that the judgment should be reversed and the cause remanded for a trial where the issues may be submitted to a jury in whose hands they rightly belong.